United States District Court
Southern District of Texas

**ENTERED**

July 15, 2016

David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| STEPHEN MCCARTY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:15-cv-01214 |
| | § | |
| CITY OF SOUTHSIDE PLACE, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION TO EXCLUDE TESTIMONY BY GILBERT MATHIS**

Plaintiff Stephen McCarty ["McCarty," or "Plaintiff"] brings this action against his former employer, Defendant City of Southside Place ["the City," or "Defendant"], alleging violations of the Uniformed Services Employment and Reemployment Rights Act ["USERRA"], 38 U.S.C. §§ 4301 *et seq.* and the Consolidated Omnibus Reconciliation Act ["COBRA"], 29 U.S.C. §§ 1161 *et seq.*.  (Plaintiff's Original Complaint ["Complaint"], Docket Entry No. 1). The parties have consented to proceed before a United States magistrate judge for all purposes, including the entry of a final judgment, under 28 U.S.C. § 636(c).  (Docket Entry No. 10). Before the court is Defendant's motion to exclude certain opinion testimony from Plaintiff's proposed expert witness on damages, Gilbert L. Mathis.  (Defendant's Supplemental Motion to Exclude Expert Witness, Gilbert Mathis ["Motion"], Docket Entry No. 93).  Plaintiff has responded in opposition to the motion, and Defendant has replied.  (Plaintiff's Response to Defendant's Supplemental Motion to Exclude Expert Witness, Gilbert Mathis ["Response"], Docket Entry No. 100; Defendant's Reply in Support of its Supplemental Motion to Exclude

Expert Witness Gilbert Mathis ["Reply"], Docket Entry No. 107).   After considering the

pleadings, the evidence submitted, and the applicable law, Defendant's motion is GRANTED.

## I. Background

Stephen McCarty, a member of the United States Naval Reserve, worked for the City of

Southside, as its Chief of Police, from December 2012, until his termination on September 4,

2014.  (Compl. ¶¶ 8-9, 19).   On August 6, 2014, Plaintiff reportedly informed the City that he

was being sent overseas on active military duty the next month.  (*Id.* at ¶ 16).   McCarty alleges

that one day before his scheduled deployment, on September 4, 2014, the City fired him for

"insubordination," "dishonesty," and "conduct unbecoming of an official in your position."  (*Id.*

at ¶¶ 19-20).

On May 6, 2015, McCarty filed this lawsuit against the City, alleging that it had

discriminated against him, on the basis of his military service, by terminating his employment, in

violation of 38 U.S.C. § 4311(a); that it had retaliated against him for "t[aking] action to enforce

protections afforded to him under USERRA," in violation of 38 U.S.C. § 4311(b); that it had

failed to properly contribute to his retirement plan, in violation of 38 U.S.C. § 4318; and that it

had "fail[ed] to provide [him] with notice of his right to continue health coverage upon

termination of his employment," in violation of COBRA.  (*Id.* at ¶¶ 39, 45, 50).   In this action,

McCarty seeks lost wages and benefits, including back pay and front pay, as compensation for

the City's alleged violations of USERRA.[1]  (*Id.* at ¶ 52).

Gilbert L. Mathis ["Mr. Mathis"] is an economist who has been named as an expert

---

1.  USERRA allows three remedies to a prevailing plaintiff: (1) an injunction requiring an employer to comply with USERRA's provisions; (2) compensation for "any loss of wages or benefits" suffered by reason of an employer's failure to comply with USERRA; and (3) liquidated damages, in an amount equal to lost wages or benefits, if the employer's failure to comply with USERRA was "willful."  38 U.S.C. § 4323(d)(1)(A)-(C).  "Lost wages" under USERRA may include both back pay and front pay.  *See Carpenter v. Tyler Indep. Sch. Dist.*, 226 F. App'x 400, 400 (5th Cir. 2007).

witness for McCarty.  (Docket Entry No. 61 Ex. C).  On February 15, 2016, Mr. Mathis submitted a supplemental expert report in this action.[2]  (Mot. Ex. B ["Mathis Report"]).  In that supplemental report, Mr. Mathis offered his opinion on the amount of back pay and front pay, which he refers to as "lost earning capacity," that would be due to McCarty, if he prevails in his lawsuit against the City.  (*Id.* at 3).  Mr. Mathis concluded that, should Plaintiff prevail, he is entitled to $27,411.00 in back pay, for the period from May 1, 2015 through August 22, 2016, and to an additional $1,512,096.00 to $2,032,886.00 in future wages and benefits, as compensation for his termination by the City.  (*Id.* at 4-5).

The City now moves, under Federal Rule of Evidence 702, to exclude the opinions offered by Mr. Mathis in his supplemental report.  (Mot. 2).  It contends that Mr. Mathis's methodology for calculating back pay and front pay is "unreliable," and that the factual foundation underlying his opinions is "insufficient."  (*Id.* at 2, 4).  Defendant also contends that Mr. Mathis's opinions on front pay are "irrelevant," because the determination of front pay is a matter "within the province of the court, not the jury[.]"   (*Id.* at 4).  From a review of the pleadings, the evidence submitted, and the applicable law, the court concludes that the City's motion should be granted.

## II. Standard of Review

Federal Rule of Evidence 702 ["Rule 702"] governs the admissibility of expert testimony. Under Rule 702, an expert witness may provide opinion testimony, only if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

---

2.  Mr. Mathis filed his initial expert report on January 26, 2016.  (Docket Entry No. 58 Ex. I).

Fed. R. Evid. 702; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999).

The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 59 (1993) provides the analytical framework for determining whether expert testimony is admissible under that rule.  "In *Daubert*, the [] Court explained that Rule 702 assigns to the district judge a gatekeeping role to ensure that scientific testimony is both reliable and relevant." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (per curiam) (quoting *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)).  The party offering the expert opinion bears the burden to establish, by a preponderance of the evidence, that it is admissible.  *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 385 (5th Cir. 2009) (citing *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)).

To be relevant, expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue."  *Pipitone*, 288 F.3d at 245 (quoting *Daubert*, 509 U.S. at 591). Reliability, on the other hand, is determined by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid."  *Knight*, 482 F.3d at 352 (quoting *Daubert*, 509 U.S. at 592-93).   To be reliable, expert testimony must "be grounded in the methods and procedures of science and be more than unsupported speculation or subjective belief." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)); *see Huss v. Gayden*, 571 F.3d 442, 460 (5th Cir. 2009) ("Courts must be arbiters of truth, not junk science and guesswork.").  To establish reliability, an expert must furnish "some objective, independent validation of [his] methodology."  *Brown v. Ill. Cent. R.R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013) (quoting *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)) (alteration in original).   "The expert's assurance that he has utilized generally accepted [principles] is insufficient."  *Id.*; *see Kumho*, 526 U.S. at 157 (stating that the

court is not required to "admit opinion evidence that is connected to existing data only be the *ipse dixit* of the expert"). Ultimately, however, it is the court's responsibility "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152.

## III. Analysis

The City here challenges the admissibility of Mr. Mathis's opinions regarding back pay and front pay. In his supplemental report, Mr. Mathis began his analysis by calculating McCarty's back pay damages. To do so, he first determined McCarty's net annual salary on September 4, 2014, the date on which he was terminated, including his salary and all benefits. (*Id.* at 3). Mr. Mathis then projected that amount over the period from May 1, 2015, the first day that McCarty "could have" returned to work following his military duty, through August 22, 2016, the initial trial date. (*Id.* at 3, 7; *see* Mot. Ex. A ["Mathis Deposition"] at 14:16-20; Resp. 4). To arrive at a final back pay amount, Mr. Mathis deducted the amount of base pay that McCarty earned as an employee of the United States Navy during that same period. (Mathis Rep. 3-4, 7).

To calculate front pay damages, Mr. Mathis projected McCarty's net annual pay over the period from September 1, 2016, until Plaintiff's sixtieth birthday, in 2030, and alternatively, over the period from September 1, 2016, until the end of his work-life expectancy, in 2049. (*Id.* at 2-5). As part of his analysis, Mr. Mathis adjusted McCarty's projected income, for each individual year, to reflect an employee-provided benefits rate of 39.92 percent; a discount rate of 5 percent; and a wage growth rate of 3.2 percent. (*Id.* at 4, 7).

In its Motion, the City argues that Mr. Mathis's calculations of McCarty's damages fail to meet the reliability requirements set out in Rule 702.  (Mot. 4, 6-9).  In doing so, Defendant insists that Mr. Mathis based his calculations solely on "misinformation [and] faulty assumptions provided to him by Plaintiff's counsel."  (*Id.*).

Defendant first takes issue with Mr. Mathis's back pay calculation.  (*Id.* at 6-7).  It claims that, in calculating back pay, Mr. Mathis intentionally "disregard[ed]" income that McCarty received from the United States Navy after he was terminated by the City.  (*Id.* at 7).  In addition, Defendant argues that Mr. Mathis relied on a back pay "start" date, May 1, 2015, that is irrelevant, because McCarty did not return from military deployment until April 2016.

The City likewise questions the reliability of Mr. Mathis's front pay calculation.  (*Id.* at 8-9).  Defendant complains that, in calculating front pay, Mr. Mathis failed to consider Plaintiff's "mitigation efforts," and that he, instead, "erroneously assumed" that McCarty would never work again.  (*Id.*).  According to Defendant, Mr. Mathis's front pay calculation "ignores the fact that Plaintiff has been continuously employed and is currently earning with the [United States] Navy significantly more than he did during his employment with [the City]."  (*Id.* at 9).

In addition, and in the alternative, the City argues that Mr. Mathis's opinions on front pay are irrelevant, because that is an equitable remedy that is to be determined by the court.  (*Id.* at 7-8).  Defendant contends, for that reason, that Mr. Mathis's testimony "would not be help the jury," and that it "would only cause confusion."  (*Id.* at 8).

Finally, Defendant objects to Mr. Mathis's use of the term, "lost earning capacity," in his supplemental report, to mean "lost wages and benefits," on the grounds that it is "inherently misleading."  (*Id.* at 4-5).  Defendant is adamant that damages for loss of earning capacity are not recoverable under USERRA.  (*Id.* at 4).

Plaintiff, on the other hand, insists that Mr. Mathis's opinions in his supplemental report are both reliable and relevant.  (Resp. 4-8).  McCarty contends that the City's objections to Mr. Mathis's calculations of back pay and front pay "go[] to the credibility of the testimony, not its reliability or admissibility."  (*Id.* at 2).

*A. Back Pay*

USERRA allows a prevailing plaintiff to recover back pay as compensation for an employer's unlawful conduct.  *See Carpenter v. Tyler Indep. Sch. Dist.*, 226 F. App'x 400, 400 (5th Cir. 2007).  Back pay refers to those "wages and other benefits that an employee would have earned if the unlawful event that affected the employee's job related compensation had not occurred."  *Rutherford v. Harris Cnty., Tex.*, 197 F.3d 173, 191 (5th Cir. 1999).  Generally, back pay should be computed from the date of the adverse employment action, up to the date that a final judgment is entered.  *Id.*  "Courts uniformly offset interim earnings from back pay awards in order to make the plaintiff whole, yet avoid windfall awards."  *Brunnemann v. Terra Int'l, Inc.*, 975 F.2d 175, 179 n.7 (5th Cir. 1992); *see Carpenter*, 226 F. App'x at 400 (affirming a district court's denial of back pay damages to a USERRA plaintiff who failed to mitigate); *Serricchio v. Wachovia Sec., LLC*, 606 F. Supp. 2d 256, 261 (D. Conn. 2009); *see also Helton v. Mercury Freight Lines, Inc.*, 444 F.2d 365, 367 (5th Cir. 1971) (applying predecessor statute to USERRA) ("[T]he veteran should be made whole, and reimbursed for the measurable wage disadvantage or loss suffered through his incorrect reinstatement.").

At his April 14, 2016 deposition, Mr. Mathis explained the methodology that he used to calculate back pay.  Mr. Mathis testified that, in calculating back pay, Plaintiff's attorney, Joe Napiltonia, supplied him with the facts, and he then "ma[d]e the calculations based on those facts."  (Mathis Dep. 8:8-16).  Mr. Mathis explained that, under Mr. Napiltonia's instruction, he

calculated Plaintiff's back pay from May 1, 2015, because that was "the date that [Plaintiff] could have returned and gone back to work at the City [] had he not been terminated." (*Id.* at 14:16-20). In addition, Mr. Mathis testified that, at Mr. Napiltonia's insistence, he offset Plaintiff's back pay damages, only by the amount of base pay that Plaintiff earned from the Navy, rather than by his total pay. (*Id.* at 72:24-73:6).

Aside from these bare assertions, however, Mr. Mathis provided no support for, or explanation of, his calculation of McCarty's back pay damages. Indeed, at his deposition, Mr. Mathis admitted that many of the assumptions underlying his back pay calculation were factually inaccurate. For instance, Mr. Mathis testified that, from his understanding, McCarty did not return from deployment until April 2016. (*Id.* at 15:7-18). In fact, Mr. Mathis admitted that he did not know when, or for how long, Plaintiff was deployed on active military duty. (*Id.* at 12:24-13:1). Likewise, Mr. Mathis conceded that McCarty's total income from the United States Navy may have actually exceeded his income from the City. (*Id.* at 17:1-6).

Further, the factual premises underpinning Mr. Mathis's back pay calculation are directly contradicted by the undisputed evidence. According to his financial records, McCarty's total monthly income from the United States Navy, during his deployment, exceeded his income from the City by approximately $1,300.00. (Docket Entry No. 58 at Ex. G). Rather than review and base his back pay calculation on available financial records, however, Mr. Mathis relied, exclusively, on Mr. Napiltonia's representations of McCarty's earnings. There is no indication that Mr. Mathis conducted an independent study of the data provided to him by Plaintiff's attorney. *See Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 372 (5th Cir. 2000); *Orthoflex, Inc. v. Thermo Tek, Inc.*, 986 F. Supp. 2d 776, 792 n.12 (N.D. Tex. 2013). As a result, his opinions on back pay are unreliable, and they must be excluded on that basis. *See In re TMI*

*Litig.*, 193 F.3d 613, 697-98 (3d Cir. 1999) (upholding the exclusion of an expert's testimony, because the sole basis for the testimony was summaries prepared by the plaintiff's attorney); *Lyman v. St. Jude Med. S.C., Inc.*, 580 F. Supp. 2d 719, 726-27 (E.D. Wis. 2008) (excluding an expert's damages report, because the expert never "independently verified the reliability of the [underlying] data," and instead, "accept[ed] it at the word of [the defendant]'s counsel"); *Young v. Brand Scaffold Servs., LLC*, No. 1:07-CV-917, 2009 WL 4674053, at *4 (E.D. Tex. Mar. 16, 2009) (finding an expert's opinions on damages to be inadmissible, because the data underlying those opinions was "speculative and conjectural at best, lacking any support in the record[,] and belied by [the plaintiff's] work history"); *Crowley v. Chait*, 322 F. Supp. 2d 530, 546-47 (D. N.J. 2004) (excluding an expert's opinions that were based, almost entirely, on summaries provided by counsel, because "to allow him to offer testimony to a jury as to conclusions he has reached on the basis of this highly filtered version of events, is unacceptable").

*B. Front Pay*

The City also challenges Mr. Mathis's front pay calculation.  Front pay is a form of equitable relief under USERRA that is intended "to compensate the plaintiff for lost future wages and benefits."  *E.E.O.C. v. E.I. Du Pont de Nemours & Co.*, 480 F.3d 724, 732 (5th Cir. 2007); *see Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001) ("[F]ront pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement.").  Unlike back pay, "front pay is a prospective remedy that estimates the damage the plaintiff will continue to suffer after the date of final judgment as a result of the wrongdoing." *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 490-91 (5th Cir. 2007).

"Calculations of front pay cannot be totally accurate because they are prospective and necessarily speculative in nature." *Julian v. City of Houston, Tex.*, 314 F.3d 721, 729 (5th Cir.

2002) (quoting *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870 (5th Cir. 1991)).

Nevertheless, an award of front pay must be "carefully crafted to avoid a windfall to the

plaintiff." *Palasota*, 499 F.3d at 491. To calculate front pay, an expert may consider several

factors, including: (1) "the length of prior employment;" (2) "the permanency of the position

held;" (3) "the nature of the work;" (4) "the age and physical condition of the [plaintiff];" (5)

"possible consolidation of jobs;" and (6) "the myriad other non-discriminatory factors which

could validly affect the possible . . . post-discharge employment relationship." *Downey v. Strain*,

510 F.3d 534, 544 (5th Cir. 2007) (citing *Reneau*, 945 F.2d at 871).

At his deposition, Mr. Mathis explained the methodology that he used to calculate front

pay, in relevant part, as follows:

> A: I made the [front pay] calculations based on what [McCarty] could have
> earned if he did return – had he not been terminated, and I made those
> calculations out to two time periods, one to his age 60 and [one] to his work-life
> expectancy. I did not make any assumptions on when he might return or how
> long he would have worked if he had.
>
> * * *
>
> A: I adjusted for expected growth and earnings and I also discounted it based on
> interest rates to present value.
>
> Q: Right. I was going to get to that. So then you calculated the amount, factoring
> in assumptions based upon the growth and what his salary might become in the
> future if he stayed with [the City], and then you reduced that back to an amount
> that would represent present value? Is that correct?
>
> A: Yes.

(Dep. 9:18-10:18).

Here, the data which forms the basis of Mr. Mathis's front pay calculation lacks any

indicia of reliability. Mr. Mathis testified that he premised his front pay calculation on data

provided to him by Plaintiff's attorney. (*Id.* at 8:3-23). He testified, specifically, that he relied

on Mr. Napiltonia's representations to him regarding "the wages that [Plaintiff] would have earned going forward;" "the fringe benefits that would have been provided by his employer;" and "the dates in which [sic] to make the calculations for [front] pay." (*Id.* at 8:11-23). However, Mr. Mathis did not independently verify the source and accuracy of the data that he relied upon to form his opinions. *See Hopper v. M/V UBC SINGAPORE*, No. H-09-1223, 2010 WL 2787806, at *4-5 (S.D. Tex. Jul. 14, 2010) (finding an expert's opinions on front pay damages to be unreliable, because "[h]is only source for [certain underlying data] was the representation of [the] [p]laintiff's counsel").

Equally important, Mr. Mathis failed to analyze, or even to mention, Plaintiff's future mitigation efforts. It is well-settled that an award of front pay damages "should reflect earnings in mitigation of damages." *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 489 (5th Cir. 2001); *Carpenter v. Tyler Indep. Sch. Dist.*, 429 F. Supp. 2d 848, 852 (E.D. Tex. 2006); *Duarte v. Agilent Techs., Inc.*, 366 F. Supp. 2d 1039, 1048 (D. Colo. 2005); *see also* ("[F]ront pay is to provide a financial cushion for a reasonable period during which a diligent claimant could secure reemployment."). In his supplemental report, however, Mr. Mathis assumed, without any explanation, that Plaintiff will never reenter the workforce. (*See* Mathis Dep. 9:4-24). In making that assumption, Mr. Mathis did not discuss any of the factors that are relevant to front pay, such as the duration of McCarty's employment with the City; the "permanency" of his position; the "nature" of his work; his "age and physical condition;" and "the possible consolidation of his job." *See Downey*, 510 F.3d at 544; *Masinter v. Tenneco Oil Co.*, 929 F.2d 191, 193 (5th Cir. 1991) (finding an expert's front pay calculation to be speculative and therefore unreliable, because he "assumed that [the plaintiff] would remain employed with [his current employer] despite the fact that it underwent massive layoffs," and because he "presumed that [the plaintiff] would continue

11

to incur future wage loss through the age of 70"); *Osborn v. Computer Sciences Corp.*, No. A-04-CA-158-LY, 2005 WL 5881949, at *3 (W.D. Tex. 2005) (finding that an expert "cured any defect that resulted from [his] previous failure to reduce his front pay assessment by [the plaintiff's] future commissions earned with subsequent employment," because he "adjusted his front pay figure downward").  Further, Mr. Mathis's assumption is belied by the uncontroverted record, which shows that Plaintiff has been employed, continuously, since he was fired by the City in September 2014.  (*See* Mot. Ex. G at 8-19).  For those reasons, his opinions on front pay are unreliable.  *See Hopper*, 2010 WL 2787806, at *5 (finding an expert's methodology for calculating front pay damages to be "woefully inadequate," because "[r]ather than review and base his calculation on available payroll records, [he] adopted [the plaintiff]'s attorney's representation of [] earnings," and because he "failed to deduct all the taxes that [the plaintiff] would have been required to pay").

On this record then, Plaintiff has failed to show that Mr. Mathis's opinions are based upon sufficient facts and scientific knowledge to meet the reliability requirements of Rule 702. For that reason, those opinions must be excluded.  *See In re TMI Litig.*, 193 F.3d 613, 697-98 (3d Cir. 1999) (upholding the exclusion of an expert's testimony, because the sole basis for the testimony was summaries prepared by the plaintiff's attorney); *Lyman v. St. Jude Med. S.C., Inc.*, 580 F. Supp. 2d 719, 726-27 (E.D. Wis. 2008) (excluding an expert's damages report, because the expert never "independently verified the reliability of the [underlying] data," and instead, "accept[ed] it at the word of [the defendant]'s counsel"); *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 98 (3d 1983) ("[P]laintiff's expert's testimony must be accompanied by a sufficient factual foundation before it can be submitted to the jury.").

More importantly, even assuming that Mr. Mathis's opinions on front pay were reliable, they are irrelevant.  As Plaintiff concedes, an award of front pay is determined by the court, not by the jury.  For that reason, his testimony on front pay damages is not relevant.  *See Richardson v. Axion Logistics, LLC*, No. 13-cv-00302-BAJ-RLB, 2016 WL 3034483, at *1-2 (M.D. La. May 26, 2016) (finding a damages expert's testimony on front pay to be irrelevant for the jury to hear, and excluding it on that basis).

**IV. Conclusion**

Accordingly, it is **ORDERED** that Defendant's motion to exclude the testimony of Gilbert Mathis is **GRANTED**.

The Clerk of the Court shall enter this memorandum and order and provide a true copy to all counsel of record.

**SIGNED** at Houston, Texas, this 15th day of July, 2016.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**